UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DWAYNE MOSLEY | § | CIVIL ACTION NO. 2:16-cv-107 |
| | § | |
| VERSUS | § | JUDGE MILAZZO |
| | § | |
| WOOD GROUP PSN, INC. | § | MAGISTRATE JUDGE ROBY |
| and GOM SHELF LLC | § | |

### RESPONSE OF FIELDWOOD ENERGY LLC TO MOTION FOR SUMMARY JUDGMENT BY WOOD GROUP PSN, INC.

MAY IT PLEASE THE COURT:

Defendant, Fieldwood Energy LLC ("Fieldwood"), files this memorandum in response to the Motion for Summary Judgment (Doc. 94) filed by defendant, Wood Group PSN, Inc. Because this Court should grant Fieldwood's motion for summary judgment (Doc. 91), and dismiss the Complaint, as amended, of plaintiff, Dwayne Mosley against Fieldwood, Wood Group should similarly be entitled to summary judgment from Mr. Mosley's claims because Wood Group's nominal employee, Jessie Villemarette, would be a borrowed servant of Fieldwood and thus Mr. Mosley's co-employee, for which Wood Group would also be entitled to tort immunity under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 933(i).  See *Perron v. Bell Maintenance & Fabricators, Inc*., 970 F.2d 1409, 1412 (5th Cir. 1992); *Robertson v. W&T Offshore, Inc*., 712 F. Supp. 2d 515, 537 (W.D. La. 2010).

In the alternative, should this Court deny Fieldwood's motion for summary judgment on Mr. Mosley's status as Fieldwood's borrowed servant, which is expressly denied, then Wood Group's motion for summary judgment likewise should be denied because Mr. Villemarette would lose his status as a co-employee of Mr. Mosely.  Under Louisiana law, which is adopted as the applicable federal law by the Outer Continental Shelf Lands Act, Wood Group remains

vicariously liable for the torts of Mr. Villemarette, such that to the extent Mr. Villemarette is found to be negligent, which is denied, then Wood Group and Fieldwood are solidarily and vicariously liable for such negligence, as set forth in *Morgan v. ABC Manuf'r*, 710 So.2d 1077, 1083 – 84 (La. 1998).

I. **MATERIAL FACTS**

Except for a typographical error in Wood Group's Statement of Uncontested Fact No. 92, Fieldwood has admitted each of Wood Group's statements of uncontested material fact. Fieldwood sets forth the following additional material facts, the evidentiary support for which are attached to the Response of Fieldwood Energy LLC to Statement of Uncontested Material Facts Submitted by Wood Group PSN, Inc., also filed this date. In the footnotes associated with each statement, Fieldwood cites to the specific statement of fact in Fieldwood's Response.

Wood Group is a diversified international company that is involved in oil exploration and production.[1] As concerns production operators, Wood Group supplies employees to work as directed and at the request of its customers.[2]

Wood Group supplies production operators to W&T Offshore, Inc. and Apache Corporation.[3] As concerns Fieldwood's Platform D, Block 80, West Delta Area (hereafter sometimes "WD 80-D" or "WD 80 Dog"), Wood Group supplied contract production operators to Fieldwood.[4]

Wood Group operator Jessie Villemarette was called out by Fieldwood to serve as its person in charge ("PIC") on the WD 80-D platform.[5] Wood Group supplied Mr. Villemarette to

---

[1] Fieldwood's Additional Uncontested Material Facts to Resolve Wood Group's Motion, hereafter "Fieldwood Additional Uncontested Fact", No. 1.
[2] Fieldwood Additional Uncontested Fact No. 2.
[3] Fieldwood Additional Uncontested Fact No. 3.
[4] Fieldwood Additional Uncontested Fact No. 4.
[5] Fieldwood Additional Uncontested Fact No. 5.

Fieldwood to work under the direction and control of Fieldwood while he was on the WD 80-D platform.[6]  Fieldwood's WD 80-D is an oil and gas production platform located on the Outer Continental Shelf, off the Coast of Louisiana.[7]

It is undisputed that Wood Group's business was the hiring of its employees out under the direction of Fieldwood and other Wood Group customers.

## II.   LAW AND ANALYSIS

### A.   Because Mr. Mosley is Fieldwood's Borrowed Servant, Wood Group is Likewise Entitled to Summary Judgment.

In *Perron v. Bell Maintenance & Fabricators, Inc.*, 970 F.2d 1409 (5th Cir. 1992), *cert. denied*, 507 U.S. 913 (1993), the Fifth Circuit addressed this exact scenario.  Perron was nominally employed by D&C on Gulf Oil's platform.  Lee was nominally employed by Bell, and allegedly left oil on the platform deck upon which Perron slipped and fell.  Perron's suit against Gulf Oil was dismissed because he was the borrowed servant of Gulf Oil, which was therefore tort immune.

Perron's claims against Bell were also dismissed because Lee was also Gulf Oil's borrowed servant.  "In sum, Perron and Lee were co-workers in every meaningful sense of the term.  And because they were borrowed servants/co-employees of the same employer (Gulf), a fortiori, there were persons in the same employ under § 933(i)."  *Id*. at 1412.  Section 933(i) provides "The right to compensation or benefits under this chapter shall be the exclusive remedy to an employee when he is injured . . . by the negligence or wrong of any other person or persons in the same employ."  33 U.S.C. § 933(i).

---

[6]   Fieldwood Additional Uncontested Fact No. 6.
[7]   Fieldwood Additional Uncontested Fact No. 7.

As concerns Perron's claims against Bell, the nominal employer of Lee, the Fifth Circuit concluded:

> Given that [the plaintiff] is barred by § 933(i) from bringing an action against Lee, at issue is whether [the plaintiff] can bring this respondeat superior action against Bell, Lee's nominal employer. Consistent with the LHWCA's comprehensive scheme, [the plaintiff] is barred from doing so.

*Perron*, 970 F.2d at 1412. See also *Robertson*, 712 F. Supp. 2d at 536 – 37.

Bell's dismissal was contingent on its nominal employee Lee being a co-employee of Perron. Lee's co-employee status was established by Perron first being found to be a borrowed servant of Gulf Oil, and thereafter Lee also being found to be a borrowed servant of Gulf Oil. Because LHWCA § 933(i) shielded co-employees of plaintiff from tort liability to the plaintiff, there could be no basis for any *respondeat superior* liability on the part of Bell, the nominal employer of the tort-immune co-employee, Lee.

As more fully set forth in Fieldwood's motion for summary judgment, Mr. Mosley is Fieldwood's borrowed servant as a matter of law. Because Mr. Villemarette is likewise Fieldwood's borrowed servant, this is the identical factual scenario presented in *Perron*, and the identical result should obtain: the dismissal of Mr. Mosley's claims against Wood Group under 33 U.S.C. § 933(i) and the *Perron* decision.

**B. Alternatively, in the Event this Court does not Grant Fieldwood's Motion for Summary Judgment concerning Mr. Mosley's Borrowed Servant Status, this Court should Hold Wood Group Liable *in Solido* with Fieldwood to the Extent Mr. Villemarette was Negligent or at Fault.**

In its memorandum in support of its motion for summary judgment, Wood Group cited to *dicta* in the Fifth Circuit decision of *Perron*, as support for the proposition that the borrowed servant is to be dealt with as the servant of the borrowing employer and not of the nominal employer. (Doc. 94 – 1, p. 15.) As discussed above, the central issue in *Perron* was whether

Gulf Oil, the borrowing employer, and Bell, the nominal employer of a co-borrowed servant (Lee), were immune from tort liability to Perron, Gulf Oil's borrowed servant.

The *Perron* court traced the genesis of the borrowed servant doctrine to *Standard Oil Co. v. Anderson*, 212 U.S. 215, 29 S. Ct. 252 (1909) and *Denton v. Yazoo & Miss. Valley Ry. Co.*, 284 U.S. 305, 52 S. Ct. 141 (1932), prior to its adoption by the Fifth Circuit as a basis for tort immunity under the LHWCA in *Ruiz v. Shell Oil Co.*, 413 F.2d 310, 312 – 13 (5th Cir. 1969). *Perron*, 970 F.2d at 1412. The Supreme Court's decision in *Anderson* ostensibly applied the borrowed servant doctrine in the context of *respondeat superior* liability either under the general maritime law or possibly the federal general common law. Similarly, the Supreme Court's decision in *Denton* applied the borrowed servant doctrine to a United States postal employee loading mail on a train in Mississippi who was allegedly injured by a porter of the railroad, which described the borrowed servant doctrine "as elementary and finds support in a large number of decisions", citing state court decisions as well, thus indicating a reliance on the federal general common law. *Denton*, 284 U.S. at 308, 52 S. Ct. at 142. Fieldwood submits that to the extent both *Anderson* and *Denton* relied, as they appear to do, on the federal general common law, that body of law was later jettisoned by the Supreme Court in *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817 (1938), and outside of their historical contexts have no bearing on this matter.

To the contrary, in this personal injury claim arising on a fixed platform off the coast of Louisiana, the substantive law of Louisiana is adopted by the Outer Continental Shelf Lands Act, 43 U.S.C. § 1333(a)(2)(A), to the extent it is not inconsistent with otherwise applicable federal law. As discussed above, the tort-immunity afforded co-employees under LHWCA § 933(i) displaces Louisiana's solidary *respondeat superior* liability of employers and their nominal

employees. LSA-C.C. art. 2320; *Perron*, 970 F.2d at 1414. Conversely, in the event Mr. Mosley is not Fieldwood's borrowed servant, then LHWCA § 933(i) is not applicable as concerns Wood Group (see *Perron*, 970 F.2d at 1414) and Louisiana's tort liability regime would apply to Mr. Mosley's claims against Fieldwood and Wood Group. *Fontenot v. Dual Drilling Co.*, 179 F.3d 969, 976 (5th Cir.), *cert. denied*, 528 U.S. 1062 (1999).

In *Morgan v. ABC Manuf'r*, 710 So. 2d 1077 (La. 1998), the Louisiana Supreme Court concluded that a general / lending employer, whose business was lending employees to its customers, was solidarily liable with the borrowing employer for the torts of the borrowed servant. *Id*. at 1078. Conversely, the Louisiana Supreme Court rejected the abolition of vicarious liability on the part of the lending employer, in light of the dual employer tort doctrine. *Id*. at 1081 – 82. See also, *LeJeune v. Allstate Ins. Co*., 365 So.2d 471 (La. 1978).

> To a temporary services provider such as Worktec, loaned employees are its stock in trade. Though the essence of Worktec's business is to profit from its employee's labors, a significant feature of its business is to pass control over the details of the work to its customers. However, Worktec retains ultimate and overriding authority over its loaned workers. This makes the application of the "right to control" test problematic. Additionally, Worktec only bills its customers for the hours its employees actually work for those customers. The loaned employees are furthering the business of Worktec at the identical time when they are also furthering the business of the special employer. Put simply, both employers had contemporaneous control over Hines, and both contemporaneously benefitted from his labor. It is therefore reasonable that considering the overlapping control and shared financial interest that they share liability.

*Morgan* at 1083.

Accordingly, under Louisiana law, where a general employer, like Wood Group, is in the business of hiring its employees, like Mr. Villemarette, out under the supervision of others, the general employer remains liable for the "borrowed" employees' torts under La. Civ. Code art.

{N1370204 -}                                6

2320.[8]  *Id*. at 1084.  To paraphrase the *Morgan* Court, "Put simply, a determination that [Mr. Villemarette] was the borrowed servant of [Fieldwood] does not preclude [Wood Group's] liability." *Id*.

The deposition testimony of the Wood Group company representative establishes that Wood Group's business is to hire out production operators to work as directed by Wood Group's customers.  Therefore, in the event this Court concludes that there are still issues of material fact that need to be resolved as concerns Mr. Mosley's borrowed servant status, then Wood Group remains liable for the torts of Mr. Villemarette.  *Morgan*, *supra*.

## CONCLUSION

Because Mr. Mosley was Fieldwood's borrowed servant for which this Court should grant Fieldwood's motion for summary judgment, then Wood Group likewise is entitled to tort immunity in accordance with 33 U.S.C. § 933(i), and the reported decisions of *Perron* and *Robertson*.  Alternatively, in the event the Court does not grant summary judgment in favor of Fieldwood, which is expressly denied, then the Court necessarily must deny Wood Group's motion for summary judgment, which should remain vicariously liable *in solido* with Fieldwood for the alleged negligence of Jessie Villemarette in accordance with the Louisiana Supreme Court's decision of *Morgan*, *supra*.

---

[8] While Wood Group notes this Court's earlier decision in *Washington v. Fieldwood Energy LLC*, No. 15-6615, Order and Reasons, as this Court is also aware Fieldwood has filed a motion to revise (Doc. 73) that Order and Reasons to the extent Wood Group did not establish its nominal employee was a co-employees of plaintiff and therefore entitled to tort immunity under LHWCA § 933(i).  Fieldwood's motion to revise is still pending, but should be granted for the same reasons set forth in this response memorandum.

Respectfully submitted:

    /s/ James D. Bercaw
James D. Bercaw, T.A. (20492)
R. Daniel Serio, Jr. (32681)
**KING, KREBS & JURGENS, P.L.L.C.**
201 St. Charles Avenue, 45th Floor
New Orleans, Louisiana 70170
Telephone: (504) 582-3800
Facsimile: (504) 582-1233
Email: jbercaw@kingkrebs.com
dserio@kingkrebs.com

Counsel for defendant, Fieldwood Energy LLC

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of September, 2017, I electronically filed the foregoing with the Clerk of court by using the CM/ECF system. Notice of this filing will be sent to counsel for all parties by operation of the Court's electronic filing system.

    /s/ James D. Bercaw